## No. 18,984.

INDUSTRIAL COMMISSION OF COLORADO, ET AL. *v.*
JOHNSON PONTIAC, INC., ET AL.

(344 P. [2d] 186)

Decided August 17, 1959.   Rehearing denied October 5, 1959.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

Mr. EUGENE O. PERKINS, for plaintiff in error Monty E. Lasher.

Mr. DARWIN D. COIT, Mr. JOHN E. WALBERG, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS cause originated before the Industrial Commission of Colorado upon the claim of Monty E. Lasher for benefits under the Workmen's Compensation Act.

On August 12, 1955, claimant was an employee of Johnson Pontiac, Inc. The claim for benefits was filed following an injury allegedly suffered on that date, and thereafter, on October 17, 1955, the insuror filed a General Admission of Liability. Hearings were had on the question of the extent and nature of the disability suffered by claimant, which were concluded November 7, 1957. At the conclusion of these hearings the insuror moved for permission to withdraw the General Admission of Liability.

The findings of the Industrial Commission contained, inter alia, the following pertinent provision:

"The Referee finds from the evidence that the claimant's accident arose out of and in the course of his employment; that after careful investigation, some two months following the accident, the respondents filed their General Admission of Liability for the accident and has during the course of claimant's disability paid compensation in the sum of $1417.50 for temporary total disability and, now because this case appears to be more serious than at first thought, they desire to withdraw

this admission, which motion is contrary to the letter and spirit of the Workmen's Compensation Act and the rules of this Commission, and such motion should be denied."

Benefits, as provided by the Workmen's Compensation law, were ordered paid to claimant. On review the district court reversed the award and directed dismissal of the claim. Findings of Fact were entered in the district court, which included the following:

"That the General Admission of Liability filed on behalf of the respondents is patently based on a misapprehension and mistake of fact.

"That the Industrial Commission of Colorado erred in denying the plaintiffs, respondents before it, application to withdraw the General Admission of Liability, when application was made to do so.

"That there is no dispute in the medical evidence, that there is no evidence that the defendant Monty E. Lasher, claimant before the Industrial Commission, has suffered any permanent partial disability as a result of an accident or 'strain' arising out of and in the course of any employment with the plaintiff, respondent below, Johnson Pontiac, Inc.; that the medical evidence is undisputed in showing that there is no medically provable connection between the 'strain' and the commencement of the occlusive process which resulted in the myocardial infarction."

Questions to be Determined.

First: *Did the trial court err in holding that the Industrial Commission erroneously refused to permit withdrawal by the insurance carrier of the General Admission of Liability?*

This question is answered in the affirmative. The date of the accident was August 12, 1955; September 1, 1955, the employer made full report concerning the circumstances connected therewith, and the insurance carrier received a copy of this report. August 16, 1955, after treatment by a commission doctor and after his

first report was filed with the commission, the insurance carrier filed its General Admission of Liability which obligated it, inter alia, to pay benefits, " * * * for such permanent disability as may hereafter be determined to exist." For over two years compensation was paid, during all of which time the insurance company knew all the facts pertinent to the case. There is no suggestion of fraud. The conclusion of the district court that, "The General Admission of Liability * * * is patently based on a misapprehension and mistake of fact," has no support in the record. This more fully appears in the discussion of the second question.

We hold that the Industrial Commission, under all the facts involved in this case, did not exceed its authority or abuse its discretion in refusing to permit the withdrawal of the General Admission of Liability, and the district court erred in reaching a contrary conclusion. *Neal v. Stuart Foundry Co.*, 250 Mich. 46, 229 N.W. 595; *Mitchell v. Littlejohn Transportation Co.* (La. App.), 10 So. (2d) 651.

Second: *Did the trial court err in holding, as a matter of law, that there was no evidence before the Industrial Commission supporting the conclusion that the claimant suffered permanent partial disability as a result of an accident arising out of and in the course of his employment, and "that the medical evidence is undisputed in showing that there is no medically provable connection between the 'strain' and the commencement of the occlusive process which resulted in the myocardial infarction"?*

This question is answered in the affirmative. Even though it be assumed, for the purpose of argument, that the insurance carrier, under the facts in this case, is not bound by its admission of liability, there was ample evidence to support the award of the commission. We direct attention to the following language taken from the report of Dr. J. L. McDonald in his report of November 29, 1955:

"This man unquestionably had coronary occlusion with myocardial infarction on August 16, 1955. The first symptoms *undoubtedly* occurred while he was working under a car and pushing a transmission into place on August 12th. It is not uncommon for complete coronary occlusion to be preceded *as in this case by the symptoms which probably marked the very beginning of the occlusive process.* It is by no means certain that the occurrence of the coronary occlusion was related to the work he was then doing. There is some suggestion that he might have been having some exposure to carbon monoxide as judged by headaches he was then having which were similar to headaches at a previous known exposure. It is impossible at this time to verify this. It is true that if exposure were present myocardial infarction might thereby have been made more extensive." (Emphasis supplied.)

■ The employer in its report to the commission stated that the claimant "strained or pulled his heart muscle when attempting to lift a transmission into an automobile." This was a declaration against the interest of the employer, having probative value the weight of which was for the consideration of the commission. *Johnson v. Industrial Commission,* 137 Colo. 591, 328 P. (2d) 384.

■ In *Bennett v. Durango Furniture Mart,* 136 Colo. 529, 319 P. (2d) 494, this court stated, inter alia:

"An accident arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. The Commission's findings when supported by competent evidence are binding upon the courts."

To like effect is *Industrial Commission et al. v. Royal Indemnity Co. et al.,* 124 Colo. 210, 236 P. (2d) 293, where we find the following pertinent language:

" * * * All that is necessary to warrant the finding of

a causal connection between the accident and the disability, is to show facts and circumstances which would indicate with reasonable probability that the detached retina resulted from, or was precipitated by, the accident. * * * "

See also *Industrial Commission v. Corwin Hospital,* 126 Colo. 358, 250 P. (2d) 135; and *Industrial Commission of Colorado v. Havens,* 136 Colo. 111, 314 P. (2d) 698.

The judgment is reversed and the cause remanded with directions to enter judgment affirming the award of the Industrial Commission.

MR. JUSTICE HALL dissents.