McLOUTH v. STATE LAND OFFICE BOARD.

1. TAXATION—DECLARATION OF RIGHTS—GOVERNMENTAL UNITS AS PARTIES.

The county, city and school district in which lands were situated were proper and necessary parties to suit for declaration of rights under the State land office board act, as such governmental units had valuable rights and interests in the premises (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

2. SAME—TITLE—FINDINGS OF COURT—EVIDENCE—JURISDICTION.

Evidence sustained finding of trial court in suit for declaration of rights under the State land office board act that title to industrial waterfront property had vested in the State in 1931, that private individuals had no interest therein, that the auditor general and State land office board had no interest therein,

that the board never possessed any jurisdiction of the premises and that exclusive jurisdiction of the property was in the department of conservation subject to the provisions of the general tax law (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

3. Quieting Title—Tax Liens.

Where title to industrial waterfront property became vested in State long before void tax and scavenger sales thereof, which erroneously included some adjoining land belonging to plaintiffs, title to plaintiffs' land, upon which taxes have always been paid promptly, remains undisturbed.

4. Judgment—Void Tax Decree—Collateral Attack.

Where tax and subsequent scavenger sales were nullities because tax decree upon which based never became effective, decree in separate suit for declaration of rights in the property under the State land office board act was not a sanction of practice of making a collateral attack upon a tax decree (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

5. Equity—Declaration of Rights—Tax Decree—State Land Office Board Act.

In suit for declaration of rights under the State land office board act a court of equity reserves the right to determine the validity of a tax decree and sale had thereunder, especially where there has been no intervention of the rights of third parties (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

6. Costs—Public Question—State Land Office Board Act.

No costs are awarded in suit for declaration of rights under' State land office board act where such board had no jurisdiction to make determination affecting title to land involved and plaintiffs' title remains undisturbed because claimed tax liens were invalid, having been based on void decree, a public question being involved (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

Appeal from St. Clair; Stewart (Shirley), J. Submitted October 16, 1946. (Docket No. 88, Calendar No. 43,461.) Decided April 8, 1947.

Bill by Pierce McLouth and wife, against Auditor General and others, constituting State Land Office

Board, and H. Payne Saph and others, for declaratory decree fixing ownership of real estate. City of Marine City and others made parties defendant. Decree for defendant St. Clair County, Marine City, Cottrellville Township and School District No. 1, Marine City. Plaintiffs and other defendants appeal. Affirmed.

*Harold H. Emmons* and *Harold H. Emmons, Jr.,* for plaintiff.

*John R. Dethmers* and *Foss O. Eldred,* Attorneys General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Assistant Attorney General, for State Land Office Board.

*Henry W. Kleber,* for defendants Saph, Virginia A. Bradford and Coskey.

*Clarence A. Bradford, in pro. per.*

*Fred W. George, Jr.,* for St. Clair County Treasurer.

*Black & Bush,* for Marine City and School District.

BUTZEL, J. This is a companion case to *Saph* v. *Auditor General, ante,* 191, decided this day, and to which reference is made for a history of the premises and background of the issues involved herein. The 1941 decree entered in the *Saph Case* was not enrolled, nor was notice of its entry given in conformity with Court Rule No. 57 (1933, as amended), until September 25, 1945. A timely appeal was thereupon taken, and a motion to dismiss that appeal was denied by this Court. On motion of the city of Marine City, under Court Rule No. 72

(1945), an order was entered permitting the taking of additional testimony to be incorporated in the record on appeal. This was done; and in 1946, the trial court entered a final decree which set aside the earlier decree in that cause. The 1946 decree determined that title to the Independent Sugar Company property, situate in the city of Marine City, Michigan, had vested in the State of Michigan in 1931, and that Clarence A. Bradford and those claiming under him no longer had any rights in the property. On the strength of the 1941 decree, however, and before an appeal had been claimed therefrom, the property was sold at the annual tax sale of 1942 for the unpaid taxes assessed in the 1941 decree (subsequently set aside) and was bid in by the State. Thereafter the premises were conveyed to the State by the auditor general and offered for sale by the State land office board in 1944. The description used in the auditor general's petition was that contained in the 1941 decree which erroneously included a small parcel of land, adjoining the sugar company property on the north, owned by Pierce McLouth and wife. As the result thereof, McLouth was prompted to enter a bid of $9,000 at the 1944 "scavenger" sale and the property was struck off to him as highest bidder. It is claimed by the city of Marine City in its brief that this represents but a small fraction of the real value. H. Payne Saph, claiming to be the owner by virtue of a deed from Alice M. Fox, dated February 5, 1944, and recorded March 21, 1944, matched the McLouth bid. Leo A. Coskey, claiming a valid and unpaid mortgage on the property from Alice Fox and Clarence A. Bradford, likewise matched the McLouth bid. In accordance with the provisions of the State land office board act, the dispute was referred to the State land office board for arbitration and the property was

awarded to Saph; whereupon McLouth and wife, contending the board was in error, filed the bill of complaint in this case in the circuit court for the county of St. Clair, praying for a declaratory decree as provided in Act No. 155, § 9, Pub. Acts 1937, as amended (Comp. Laws Supp. 1945, § 3723-9, Stat. Ann. 1946 Cum. Supp. § 7.959).

Plaintiffs contend that title to the property vested in the State of Michigan by virtue of tax sale proceedings prior to Bradford's acquisition of his quitclaim deed in 1929. They allege that Bradford acted fraudulently in acquiring that deed and has since conspired with Ethel V. Bradford, his wife, Virginia A. Bradford, his daughter, and Alice M. Fox, his mother-in-law, for the purpose of creating the appearance of title in Saph, thus enabling Saph to bid as an owner at the "scavenger" sale, and thereafter reconvey to Bradford. They further allege that the mortgage held by Coskey is a nullity inasmuch as neither Bradford nor Alice M. Fox, the mortgagors, had any right, title, or interest in the premises when the mortgage was given. On the basis of the foregoing, plaintiffs claim that they alone had the right to bid as owner at the 1944 "scavenger" sale.

On September 28, 1945, the city of Marine City filed a petition for leave to intervene; no objection having been filed by any party, the trial court entered an order on October 13, 1945, authorizing such intervention. In its petition for intervention, the city requested a continuance of the case until the final determination of *Bradford* v. *Auditor General,* subsequently *sub nom. Saph* v. *Auditor General.* The trial court so ordered. On April 9, 1946, shortly after the entry of the second decree in the companion case, the city petitioned that its status be changed from intervening party to that of additional

party defendant; that School District No. 1 (Marine City and Cottrellville township) and St. Clair county be added as parties defendant; and that a final decree be entered in pursuance of the 1946 decree in the companion case. In substance, the city of Marine City alleged that the entire proceedings were based on false premises inasmuch as it had already been determined that title to the property, exclusive of the McLouth segment, had become absolute in the State of Michigan in 1931, in consequence of which the tax sale of 1942 and the ''scavenger'' sale of 1944 were invalid.

On May 3, 1946, the trial court entered a decree herein determining that the county, city and school district were proper and necessary parties and had valuable rights and interests in the premises under the rule stated in *School District No. 8 of Township of Ecorse* v. *State Land Office Board,* 313 Mich. 560, and that title to the property had vested in the State of Michigan in 1931. The decree perfected such title against plaintiffs Pierce McLouth and Hildegarde McLouth, and against the auditor general, the State land office board and defendants Saph, the Bradfords, Fox and Coskey. The decree further determined that defendant State land office board at no time possessed any jurisdiction of the premises and that the department of conservation has possessed exclusive jurisdiction of the property since 1931, subject to the provisions of the general tax law.

We are in accord with the holdings of the trial court. Largely as the result of almost continual defaults in tax payments by Bradford and his predecessor in interest, this valuable tract of St. Clair river frontage, on which are located three brick factory buildings, with minor exceptions, has failed to produce any tax revenue for a quarter of a century. The city of Marine City properly claimed it

has an interest in seeing that an adequate sum was paid for the property or that it be devoted to some public purpose in accordance with statutory provisions. The interest of the county and school district in the outcome of this controversy is also important.

The McLouths, who had always been prompt in paying taxes on their land, entered a bid at the 1944 "scavenger" sale for the purpose of protecting their interest in the very small parcel which adjoined the sugar company premises and which had been erroneously included in the description of the property subject to the 1941 decree in the companion case. Having secured a toe hold in the greater parcel, they seek to establish that they have a claim as owner superior to the matching bidders. In their briefs in the companion case, defendants Saph, the Bradfords and Coskey indicate that they have offered to convey their interests in this disputed small segment to the McLouths for the purpose of putting an end to this litigation. While it may be argued that this would be an equitable disposition of plaintiffs' claims and all that plaintiffs are rightfully entitled to, we are of the opinion that title to the premises, exclusive of the McLouth parcel, having vested in the State of Michigan in 1931, for reasons set forth in our opinion in *Saph* v. *Auditor General,* the tax sale of 1942 and the "scavenger" sale of 1944 were void, and title to the McLouth property remains undisturbed. Our conclusion is further buttressed by the fact that the tax sale of 1942 was in violation of a subsisting injunction issued by the trial court at the outset of the hearing of the companion case in 1939, restraining the sale of these premises "pending the hearing and final decision and decree in this cause." No notice of the entry of the 1941 decree having been given until September 25, 1945, that injunction was in full force and

effect when the auditor general issued a deed to the State on June 3, 1943.

It is the contention of the attorney general in this litigation that affirmance of the lower court's decree in the instant case is a sanction of collateral attack on tax decrees. We do not construe it as such. Having this day affirmed the lower court's 1946 decree in the *Saph Case* which voided the 1941 decree in that cause, there is no alternative but to hold that the 1942 tax sale, based upon the void 1941 decree, and the 1944 "scavenger" sale, were likewise void. Under the facts of this case, this being a court of equity, we reserve the right to determine the validity of such decree and sales, particularly so where there has been no intervention of the rights of third parties. See *Tromble* v. *Hoffman,* 130 Mich. 676; *Horton* v. *Salling,* 155 Mich. 502; *Porter* v. *Auditor General,* 255 Mich. 526.

The decree of the trial court is affirmed. A public question being involved, no costs are awarded.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.